United States District Court
Southern District of Texas
**ENTERED**
November 25, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LATARSHA PRECIADO, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:19-CV-02756 |
| § | |
| ANDREW SAUL, COMMISSIONER § | |
| OF THE SOCIAL SECURITY § | |
| ADMINISTRATION, ET AL., § | |
| § | |
| Defendant. § | |

## MEMORANDUM ORDER AND OPINION

The Fifth Circuit has explained that "[a]n applicant for disability benefits faces a long and winding road to get them." *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). For Plaintiff Latarsha Preciado ("Preciado"), that road has been particularly long and particularly winding. Her efforts to obtain disability benefits began in 2014 when she first filed the necessary applications. For the past six years, Preciado has faced starts, stops, twists, and turns along the procedural highway used by the Social Security Administration to determine whether an individual is disabled. Given how long her case has taken and how meandering the road has been, Preciado must feel as if she has had to drive on both U.S. 20 (the longest road in the United States, from Boston, Massachusetts, to Newport, Oregon) and Lombard Street (the famous and steep one-block section with eight hairpin turns in San Francisco) in an attempt to obtain her disability benefits. Although the journey certainly does not end today, I am hopeful that this opinion will allow Preciado to move in the direction of the finish line.

The Parties have filed competing motions for summary judgment. *See* Dkts. 13, 14. After carefully considering the motions, the administrative record, and the applicable law, I **GRANT** Plaintiff's Motion for Summary Judgment, and **DENY** Defendant's Motion for Summary Judgment.

## BACKGROUND

On November 25, 2014, Preciado filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. In both applications, Preciado alleged disability beginning on December 31, 2012. Those claims were denied initially on February 26, 2015, and denied again upon reconsideration on June 15, 2015. Preciado then requested a hearing before an administrative law judge ("ALJ"), which took place on April 29, 2016.

The ALJ issued an administrative decision on June 22, 2016, denying Preciado's claim for benefits. In his written findings, the ALJ found that Preciado suffered from the following severe impairments: degenerative disc disease, carpal tunnel syndrome in the right hand, and obesity. After determining that Preciado retained the ability to perform light work limited by, among other things, the ability to reach, manipulate, and finger with her upper right extremity laterally or in front on no more than an occasional basis, the ALJ concluded that Preciado was not disabled because she had the ability to perform work existing in significant numbers in the national economy. Preciado requested that the Appeals Council review the ALJ's decision, and on July 25, 2017, the Appeals Council remanded Preciado's case back to the ALJ for further proceedings. Specifically, the Appeals Council instructed the ALJ to

> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Preciado's] occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 404.1566 and 416.966). Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the [Dictionary of Occupational Titles] and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Dkt. 10-5 at 59. The Appeals Council also instructed the ALJ to "offer [Preciado] an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision." *Id.*

On remand, the ALJ held a second hearing that took place on March 21, 2018. Both Preciado and a vocational expert testified at the hearing. On July 11, 2018, the ALJ issued his second decision. In his written opinion, the ALJ analyzed Preciado's claim for benefits pursuant to the familiar five-step sequential evaluation process. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). At step one, the ALJ determined that Preciado had not engaged in substantial gainful activity since December 31, 2012. At step two, the ALJ determined that Preciado has the following severe impairments: degenerative disc disease of the spine, osteoarthritis of the hips, cardiac disease, depression, and obesity. Notably, unlike the first administrative decision, this time around the ALJ did not list carpal tunnel syndrome as a severe impairment. At step three, the ALJ determined that Preciado did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before step four, the ALJ found that Preciado had the residual functional capacity ("RFC")

to perform a modified range of light work. At step four, the ALJ determined that Preciado had no past relevant work. Therefore, the ALJ proceeded to step five and determined, based on the vocational expert testimony, that there were a significant number of jobs in the national economy that Preciado could perform given her RFC. As a result, the ALJ concluded that Preciado was not disabled.

Preciado sought review of the ALJ's second decision, but the Appeals Council denied that request. As such, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *See* 42 U.S.C. 405(g). Preciado now seeks judicial review.

## LEGAL FRAMEWORK

Judicial review of the Commissioner's "denial of disability insurance benefits 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Russo v Saul*, 805 F. App'x 269, 271 (5th Cir. 2020) (quoting *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014)). Substantial evidence is a highly deferential standard, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). *See also Perez*, 415 F.3d at 461 (substantial evidence is "more than a mere scintilla and less than a preponderance"). In applying this standard, I "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995). It is the role of the Commissioner, not the courts, to resolve conflicts in the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

## ANALYSIS

A. **Appeals Council's Remand Order**

Preciado first argues that remand is warranted because the ALJ failed to comply with the Appeals Council's remand order. I find this claim completely without merit for two reasons. First, the Appeals Council's order to the ALJ on remand was limited to fleshing out the vocational expert's testimony. Second, an ALJ's noncompliance with an Appeals Council's remand order is not, by itself, reversible error.

In his first opinion, the ALJ found that Preciado had the RFC to perform light work

> except the claimant cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch and crawl; is permitted to alternate **sitting and sitting** [sic] for five minutes every hour for back comfort; and occasionally reach, manipulate, and finger with her right upper extremity laterally or in front.

Dkt. 10-5 at 46 (emphasis added). The reference to "sitting and sitting" is clearly a typographical error. It doesn't take a forensic linguist to immediately recognize that the ALJ meant to say that Preciado is permitted to alternate "standing and sitting" for five minutes every hour for back comfort. In its remand order, the Appeals Council recognized this mistake, quoting the language above and then, in the very next sentence, noting: "As an initial matter, it appears that the decision should indicate that the claimant is permitted to alternate sitting and standing." *Id.* at 58.

Preciado interprets the Appeals Council's statement as an instruction to the ALJ that the "sitting and standing requirements should be changed from a finding allowing for a five

5

minute break every hour, to a restriction allowing [Preciado] to sit and stand at will." Dkt. 13 at 8. Nonsense. Preciado's novel interpretation is an enormous stretch for which I find no basis anywhere in the administrative record. To begin, the Appeals Council's explanation about sitting and standing is found not in the section of the order detailing the ALJ's obligations upon remand, but rather in the portion of the remand order providing the context of the ALJ's decision. More importantly, there is no reason why the Appeals Council would arbitrarily ask the ALJ, upon remand, to assume that Preciado could sit and stand at will. This is especially true here because the first administrative hearing included testimony from the vocational expert that Preciado required five minutes every hour to alternate standing and sitting to relieve back and leg pain. "Had the Appeals Council thought that the ALJ had not complied with its remand order, the Appeals Council could have granted [Preciado's] second request for review, which it denied." *Henderson v. Colvin*, 520 F. App'x 268, 274 (5th Cir. 2013).

Even if I found Preciado's argument convincing, it would still not require remand. The Social Security Administration regulations require the ALJ, on remand, to follow directives issued by the Appeals Council. *See* 20 C.F.R. § 404.977(b) (The ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."). Nonetheless, the Fifth Circuit has expressly held that failure to comply with an Appeals Council's order does not, by itself, constitute reversible error. *See Henderson*, 520 F. App'x at 273 ("[T]he clear rule is that remand is warranted only where the ALJ's decision fails to apply the proper legal standard or the decision is not supported by substantial evidence."). The ALJ's alleged

6

error has no impact on the proper legal standard. I must now turn to analyze whether the ALJ's second order is supported by substantial evidence.

## B. Substantial Evidence

Preciado next argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to consider the limiting effects of Preciado's carpal tunnel syndrome.

In the first written decision, issued in June 2016, the ALJ relied on the reports of at least three medical doctors, including consultative examiner Dr. Frank Barnes, who diagnosed Preciado with carpel tunnel syndrome in 2015, and two reviewing state-agency medical consultants—Dr. Kavitha Reddy and Dr. Amita Hegde. Dr. Reddy and Dr Hegde both opined that Preciado is limited to light duty with manipulative limitations caused by her carpal tunnel syndrome affecting her right arm. *See* Dkt. 10-5 at 6, 14, 25, and 34 (Preciado's reaching is limited "[r]ight in front and/or laterally," and her fingering, that is, fine manipulation, is limited on the right). As a result of these and other limitations, the ALJ initially found that Preciado had the RFC to perform light work limited by, among other things, the ability to "occasionally reach, manipulate, and finger with her right upper extremity laterally or in front." *Id.* at 46.

Although the Appeals Council's remand order did not criticize or challenge the ALJ's initial finding that Preciado's carpal tunnel syndrome presented manipulative limitations, the ALJ took a radically different approach the second time around. At the second hearing, the hypothetical questions the ALJ posed to the vocational expert included no reaching, handling, or fingering limitations. And the ALJ's second written decision

7

concluded that carpal tunnel syndrome was a non-severe impairment, also removing any RFC limitations for reaching, handling, or fingering. To justify this dramatic change, the ALJ explained that "[a]lthough [Preciado] was previously noted to have right carpal tunnel syndrome, there are minimal to no complaints or physical examination findings with respect to same (11F; 12F; 13F; 14F; 15F; 20F; 21F)." Dkt. 10-3 at 33. According to the ALJ, these medical records supported his finding that Preciado's "carpal tunnel syndrome [had] improved and as such, the manipulative limitations [were] not well-supported by the evidence of record." Dkt. 10-3 at 39.

Under the substantial evidence standard, I must look at the administrative record and ask whether it contains sufficient evidence to support the ALJ's factual determinations. *See Leggett*, 67 F.3d at 564. Thus, the question before me is narrow: does the administrative record contain any evidence supporting the ALJ's determination that Preciado's carpal tunnel syndrome has improved? If such evidence exists, I must uphold the ALJ's decision. *See Veillon v. U.S. Comm'r, Soc. Sec. Admin.*, No. 2:16-CV-01037, 2017 WL 1378180, at *3 (W.D. La. Apr. 12, 2017) ("[I]f the ALJ's determination is supported by substantial evidence, the court must uphold it."). On the other hand, "a finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidence to support the decision." *Henderson*, 520 F. App'x at 272.

In this case, the ALJ specifically referenced the medical records that supposedly demonstrated that Preciado's carpal tunnel syndrome had improved. A brief review of the medical records referenced by the ALJ, however, reveals the frailty of the ALJ's position. The medical records cited by the ALJ do not involve any thorough review of Preciado's

8

carpal tunnel syndrome diagnosis. Instead, the medical records document trips to the hospital to treat conditions wholly unrelated to carpal tunnel syndrome. These include emergency room visits. *See* Dkt. 10-14 at 15–41 (11F—two emergency room visits to St. Joseph Medical Center from 7/8/14 through 1/31/16 in which Preciado complained of pain in the right leg; chest pain, dizziness); *id.* at 42–97 (12F—multiple emergency room visits to Park Plaza Hospital from 9/15/2009 to 12/16/2016 in which Preciado complained of a knee injury, chest pain, flu symptoms, left arm pain, breast pain, nausea, dizziness, and bug bites); Dkt. 10-16 at 75–88 (20F—medical records describing 2/15/18 Ben Taub Hospital emergency room visit to treat abnormal vaginal bleeding and abdominal pain); *id.* at 89–101 (21F—medical records detailing 2/15/18 to 2/16/18 Ben Taub Hospital emergency room visit to treat abnormal vaginal bleeding). They also include doctor visits to conduct cardiology examinations and address several primarily feminine medical issues. *See* Dkt. 10-15 at 1–77 (13F—Ben Taub Hospital records from 2/9/11 to 1/18/2018 describing cardiology examinations, ultrasounds, mammograms, and complaints about light headedness and increased urination); Dkt. 10-16 at 2–33 (14F—El Franco Lee Health Center medical records from 2/20/16 to 2/15/18 addressing cardiology examinations, abnormal uterine bleeding, pelvic pain, excessive vaginal bleeding, and complaints of leg pain). Last but definitely least, the ALJ points to three lawyer-supplied pages providing a body mass index table. *See id* at 34–36 (15F).

It is hardly surprising that a trip to the doctor to follow up on a cardiology examination, get a mammogram, or address excessive vaginal bleeding issues would fail to discuss an individual's manipulative limitations caused by carpal tunnel syndrome.

Likewise, an emergency room visit necessitated by chest pains or a knee injury is unlikely to focus on the limited mobility of a patient's right arm caused by carpal tunnel syndrome. The body mass index table has about as much relevance to Preciado's manipulative limitations as the outcome of a Friday night high school football game. Consequently, it is disingenuous for the ALJ to suggest that these unrelated hospital visits somehow provide any evidence, let alone substantial evidence, to support his conclusion that Preciado's carpal tunnel syndrome has "improved and . . . [that] the manipulative limitations are not well-supported by the evidence of record." Dkt. 10-3 at 39. After scouring the administrative record, I have been unable to find among the hundreds of pages of medical records a single document that mentions or remotely suggests that Preciado's carpal tunnel syndrome has improved.

Accordingly, remand is clearly warranted here because the ALJ's decision is not supported by any competent evidence in the administrative record.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 13) is **GRANTED** and Defendant's Motion for Summary Judgment (Dkt. 14) is **DENIED**. This case is remanded to the ALJ for further proceedings consistent with this opinion.

SIGNED this 25th day of November 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE